## 1858.

## COUNTY OF CUMBERLAND.

JOHN TAPPAN & *als., in equity, versus* THOMAS A. DEBLOIS, *Adm.*

When the intention of a testator can be ascertained from the will, a court of equity will carry that intention into effect, if it can be done consistently with the rules of law.

Jurisdiction is given to this Court, by the Revised Statutes of 1841, c. 96, § 10, (R. S. of 1857, c. 77, § 8,) of all cases of trusts, whether arising by implication of law, or created by deed, or by will.

The general provisions of the statute 43 of Elizabeth, relating to bequests in trust for charitable uses, are in force in this State. But, as the jurisdiction of this Court, over such cases of trust, is not derived exclusively from that statute, so it is not restricted by it.

When such a trust is created by a bequest for charitable purposes, if the charity is definite in its objects, is lawful, and is to be regulated by trustees specially appointed for that purpose, this Court has jurisdiction over it, independently of the statute of Elizabeth, derived from its general jurisdiction over trusts, and will cause it to be executed, whether the uses designated are, or are not, within the terms of that statute.

A bequest of property to trustees, to be by them paid over to the executive committee of the American Peace Society, to be expended in the cause of peace, is sufficiently definite; and the trust so created will be enforced by this Court.

Tappan *v.* Deblois.

BILL IN EQUITY, brought by trustees named in the will of the late William Ladd. The property was bequeathed to them "in trust, for the cause of peace, to be by them paid over to the executive committee of the American Peace Society." The facts sufficiently appear in the opinion of the Court.

The heirs at law of said William Ladd claimed to hold the property, on the ground that the bequest was void—not being for "charitable uses," within the terms of the statute 43 of Elizabeth, and being too indefinite in its objects to be enforced by a court of chancery, under its general jurisdiction, conferred by the statutes of this State.

*Rand* argued for the plaintiffs:—

1st. The words of the devise are sufficient to pass the property; the devise is legal; and the trustees are capable of taking.

2d. It is not void for uncertainty. There are numerous cases in which bequests for purposes less definite have been supported. Hill on Trustees, 183, note 1; 2 Story's Eq., § § 1149, 1181; *Sohier* v. *St. Paul's Church*, 12 Met. 250.

3d. Such a devise may be regarded as within the equity of the statute of Elizabeth. The statute has always been construed with great liberality; and all uses of a charitable nature are considered as "charitable uses," within the meaning of the statute. Hill on Trustees, 657; 2 Story's Eq., 511, § 1164; *Burbank* v. *Whitney*, 24 Pick. 146; *Bartlett* v. *King*, 12 Mass. 537; *Going* v. *Emery*, 16 Pick. 107; *Bartlett* v. *Nye*, 4 Met. 378; *Brown* v *Kelsey*, 2 Cush. 243.

4th. But if the bequest is not within the statute of Elizabeth, the trust will be maintained by this Court, under its general jurisdiction, independent of that statute. 2 Story's Eq., § § 1162, 1187; *Vidal* v. *Girard's Executors*, 2 How. 194.

*Shepley & Dana* argued for the defendants:—

1st. The devise is not to charitable uses, but to *moral* and *political* uses only. It is, therefore, not within the uses enumerated in the preamble of the statute 43 of Elizabeth, c. 4.

The uses there specified are, " gifts, devises, &c., for the relief of aged, impotent and poor people; for maintenance of sick and maimed soldiers and mariners; for schools of learning, free schools, and scholars of universities; for repairs of bridges, ports, havens, causeways, churches, sea-banks and highways; for education and preferment of orphans; for or towards the relief, stock or maintenance of houses of correction; for marriages of poor maids; for supportation, aid and help of young tradesmen and handicraftsmen; for relief or redemption of prisoners or captives; for aid or ease of any poor inhabitants concerning payment of taxes.   2 Story's Eq., § 1160.

The devise in this case is certainly not for any one of the purposes here described, and being void, the property must go to the heirs at law.

A bequest in trust, for such objects of benevolence and liberality, as the trustee, in his own discretion, shall most approve, cannot be supported as a charitable legacy, and is, therefore, a trust for the next of kin.   *Morice* v. *Bishop of Durham*, 9 Ves. 399.

2d. The statute of Elizabeth forms, in principle and substance, a part of the law of this State.   *Going* v. *Emery*, 16 Pick. 107.

3d. This statute being the law in this State, a court of chancery will not sustain a devise for charitable purposes, unless it is for such uses as are therein enumerated.

" The various charitable purposes which will be sustained are enumerated in the statute of 43 of Elizabeth."   2 Kent's Com. 285.

In a court of chancery, such trusts only as are within the letter and spirit of the statute of Elizabeth will be sustained.   " Trusts for indefinite purposes of a benevolent nature, not charitable within the purview of that statute, will be declared void; and the property will be distributed among the next of kin.   2 Story's Eq. § § 1155, 1158, *et seq.*

4th. The American Peace Society, at the time of the death of the testator, had not been incorporated; and, without the

statute of Elizabeth, the bequest would be declared void. *Baptist Association* v. *Hart's Executors*, 4 Wheat. 1.

5th. A bequest "in trust for the cause of peace" is too vague and uncertain to be executed; and it must either be declared void, or a trust for the heirs at law. *Morice* v. *Bishop of Durham*, 10 Ves. 522.

Such a bequest is not within the statute of Elizabeth; and it is so general and indefinite, that it could not be controlled by a court of equity. 2 Story's Eq. § 1157; *Ommaney* v. *Butcher*, 1 Turn. & Russ. 269; *Vesey* v. *Jameson*, 1 Sim. & Stu. 69.

"If the trust, or the persons who are entitled to the benefit of it, as *cestuis que trust*, are altogether uncertain, the bequest is undoubtedly void." *Bartlett* v. *King*, 12 Mass. 537.

Such a bequest cannot be sustained, either under the statute of Elizabeth, or by the general jurisdiction of the Court, without that statute. *Wheeler* v. *Smith*, 9 How. 55.

The opinion of the Court was drawn up by

DAVIS, J. — The late William Ladd, by his will dated July 9th, 1839, after making various bequests to relatives and friends, proceeded to make provision for his widow, and then to dispose of all the rest of his property for the benefit of the American Peace Society, of which he was an officer, and to whose interests many years of his life had been devoted. The present controversy turns upon the construction and effect to be given to the eleventh, twelfth, and thirteenth clauses of the will.

"11 *Item.* I will and bequeath to my beloved wife, Sophia Ann Augusta, all such of my household furniture as she shall choose to retain for her own use, and all my wearing apparel, watch, spectacles, &c., to dispose of as she may see fit, and also sixty dollars a month be paid to her monthly, out of the proceeds of my estate, during her life.

"12 *Item.* All the rest of my estate, real, personal and mixed, I bequeath to John Tappan, merchant, of Boston, Mass., Anson G. Phelps, merchant, of the city of New York, and Samuel E. Coues, merchant, of the town of Portsmouth, N. H.,

in trust, for the cause of peace, to be by them paid over to the executive committee of the American Peace Society, for the time being, in such manner that the whole of my property, excepting the provisions above made for my wife and others, shall be expended in the cause of peace, both principal and interest, within ten years of my death, leaving ample funds for the payment of my widow's monthly allowance.

"Nevertheless, should the American Peace Society change its present constitution, then I leave it to the above named trustees to expend the amount of my money in such other ways as they may think most agreeable to my intentions.

13.   I also will that the amount of my property which is to be reserved for my wife, as above specified, shall also be expended in the cause of peace, in ten years after her death, as that in ten years after the death of both of us, there shall be nothing of my property left unexpended."

Samuel E. Coues accepted the trust of executor, and partially settled the estate.   In 1849, he resigned the trust, and Alexander Ladd was appointed administrator of the estate, with the testator's will annexed.   Said Ladd died in 1855, and the defendant was appointed in his place in 1856.

The trustees named in the will accepted the trust; and the executor, after settling the estate, and paying the other legacies, paid over to them the proceeds of the rest of the property, reserving a fund sufficient, when invested, to pay the allowance of sixty dollars a month to the widow.   She lived until 1855.   After her decease, the trustees claimed to receive the fund that had been reserved for her support, for the benefit of the American Peace Society; but the defendant declined to pay it over to them, as the heirs at law of William Ladd also claimed the property.   To which of these claimants does the estate belong?

Before examining the other questions which have been argued with so much learning and ability, it is important for us to ascertain the intention of the testator, as expressed in the will.   For it has long been the settled doctrine in courts of equity, that such intention should be carried into effect, if it

can be done consistently with the rules of law.   *Thelusson* v. *Woodford*, 4 Ves., Jr., 329.

It is contended, by the counsel for the defendant, that there are two distinct legacies to the trustees; one in the twelfth clause, to be paid by them to the executive committee of the American Peace Society, — and the other in the thirteenth clause, to be expended by the trustees themselves, in the cause of peace.

But we are of opinion that there is but one bequest, which is all embraced in the twelfth clause.   After making the specific bequests in the previous clause, making provision for a monthly allowance for the widow, the testator proceeds, " All the rest of my estate, real, personal and mixed, I bequeath to John Tappan," &c.   This is the only sentence in either clause containing any words of gift or bequest.   The remainder of the two clauses relates solely to the time of payment to the trustees, and the time and manner of payment by the trustees to the executive committee of the Peace Society.   Though the trustees were residuary legatees, in gross, they were not to receive the whole property at one time.   At the death of the testator, they were to receive all except a reserved fund, the interest of which would pay the widow sixty dollars a month.   At the death of the widow, they were to receive the rest. .

It is equally clear that it was only in a contingency that never happened that the trustees were themselves to expend any part of the property.   They had no discretion conferred upon them except as to the time when, within ten years from the death of the testator, and of the widow, they should pay over the property to the executive committee of the Peace Society. They had no authority to expend it in any other way, unless that society should change its constitution.   Whether, in that event, the bequest would have been void, because of the uncertain and indefinite nature of the charity, we are not called upon to decide.   The constitution of the Peace Society was not changed; and, consequently, the clause in the will providing for that contingency became inoperative, and the will is

to be treated as if it contained no such provision. The bequest is valid, if so at all, under the general provision, that the trustees should receive the property — one portion on the death of the testator, and the rest on the decease of the widow, and "*pay it over* to the executive committee of the American Peace Society, for the time being, *in such manner*, that, in ten years after the death of both, there should be no property left unexpended." .

The object of the American Peace Society, as defined by the second article of the constitution, is "to illustrate the inconsistency of war with christianity, to show its baleful influence on all the great interests of mankind, and to devise means for insuring universal and permanent peace." At the time of the testator's death, this society was not incorporated; nor does the case show that it has been incorporated since. The question is, therefore, — is a bequest of property to trustees, to be paid by them to an unincorporated society, and to be expended by such society "in the cause of peace," valid? The counsel for the defendant insists that such a bequest is too vague and uncertain to be executed by a court of chancery, under its ordinary judicial equity powers; and that the bequest is not to "charitable uses," within the statute of 43 Elizabeth, but is only to moral and political uses.

The general provisions of the statute of Elizabeth are undoubtedly in force in this State. But it is quite certain that the bequest in the case before us is not within the literal terms of the statute. It has, however, always received an extremely liberal interpretation; and a great variety of bequests have been sustained, which, though not within the letter, have been deemed charitable within the equity of the statute. 2 Story's Eq., § § 1161, 1164. Such a principle of construction gives such latitude to the judicial discretion, and depends for its application so much upon the impressions made by different cases upon the minds of different Judges, that we need not be surprised to find the decisions apparently in conflict. On comparing many of the bequests that have been sustained, with others that have been pronounced void, we doubt if any

very satisfactory reason can be given why they should not have been decided alike.

Thus, a bequest of a fund to executors, to be applied to such charitable and other purposes, as they shall think fit, has been held to be void, on account of its indefiniteness. *Ellis* v. *Selby*, 1 Mylne & Craig, 286. So, also, a bequest in these words, " in case there is any money remaining, I should wish it to be given in private charity," has been held to be invalid. *Ommany* v. *Butcher*, 1 T. & Russ. 260. And a bequest to trustees, for such charitable purposes and persons as the trustees, in their discretion may think fit, has been held to be too vague and indefinite to be executed. *Vesey* v. *Jamson*, 1 Sim. & Stu. 69. And, if the gift is to benevolent, religious and charitable objects, it has been declared invalid, not only on account of its uncertainty, (*Morice* v. *Bishop of Durham*, 10 Ves., Jr., 522,) but also, because the uses were not limited to cases of charity, but extended to those of benevolence also. *Williams* v. *Kershaw*, 1 Keen, 232, 274.

On the other hand, a bequest for such religious and charitable purposes, as the majority of the trustees should approve, has been held to be valid. *Baker* v. *Sutton*, 1 Keen, 224. So, also, a bequest for such charities as the trustees may think fit, recommending poor clergymen who have large families and good characters. *Moggridge* v. *Thackwell*, 7 Ves., Jr., 36 ; 13 do., 416. And a bequest for such charitable and pious uses as the executors may think fit, recommending that the greater part be expended for the advancement of the christian religion in America, has been sustained. *Attorney General* v. *London*, 3 Bro. C. Cas., 171. So, also, a bequest for the poor inhabitants of St. Leonard ; Ambler, 422. Lord ELDON held that a bequest to the Welch Circulating Charity school, " to purchase such religious books as the trustees should think fit," was within the statute of Elizabeth. *Attorney General* v. *Stepney*, 10 Ves. 22. And Lord THURLOW held that the bequest of a fund to be forever applied for the purchase and distribution of such books as " may have a tendency to promote the interests of virtue and religion, and the happiness of

mankind," was sufficiently definite. *Browne* v. *Yeall*, 7 Ves., Jr., 50, note 5.

Whether these bequests would have been sustained, except under the statute of Elizabeth, may be doubtful; though the better opinion seems now to be, that the statute was merely cumulative and ancillary; not extending the power of the testator, but furnishing more available remedies to legatees. *Dutch Church* v. *Mott*, 7 Paige, 80. But, though it may be true, that the English Courts enforced trusts for charitable uses before the statute of Elizabeth; yet, it is also probably true, that, since that time, they have exercised jurisdiction over such trusts only under the statute. 2 Story's Eq. § 1155.

The first case of importance in this country was that of the *Baptist Association* v. *Hart's Ex'rs*, 4 Wheat. 1. This case arose under the law of Virginia, where the statute of Elizabeth had been repealed. The bequest was to an unincorporated society, in trust, for certain specified purposes; and the Supreme Court of the United States declared it void, because such a society was not capable of taking and disposing of the legal estate. That such a bequest would have been held valid in any State where the statute of Elizabeth was in force, there can be no doubt. *West* v. *Knight*, 1 Chancery Cas., 135. For a bequest will never fail for want of a trustee. If there is no trustee named in the will, or, if the trustee named is not capable of taking, the executor, or the heir at law, will be held as trustee; or the Court will appoint one. *Washburn* v. *Sewall*, 9 Met. 280; *Sohier* v. *St. Paul's Church*, 12 Met. 250; *Brown* v. *Kelsey*, 2 Cush. 243; *Groton* v. *Ruggles*, 17 Maine, 137; *Beaty* v. *Kurtz*, 2 Pet. 583; *Burr* v. *Smith*, 7 Vermont, 210; *Whitman* v. *Lex*, 17 S. & R. 88.

The correctness of the decision in the case of the *Baptist Association* v. *Hart's Ex'rs*, very soon began to be doubted. It was commented upon without approval, though not with any distinct dissent, by the same Court, in the case of *Inglis* v. *Trustees of Sailors' Snug Harbor*, 3 Pet. 113. In this case the bequest was sustained, though to an unincorporated society, and for purposes general in their nature. In the case of

*Porter* v. *Chapin*, 6 Paige, 649, Chancellor WALWORTH says, "although some doubt was thrown upon the question of charitable donations for the benefit of a community or body not incorporated, so as to be capable of taking and conveying the legal title to the property, in the case of the *Baptist Association* v. *Hart's Ex'rs*, I believe it is generally admitted that the decision in that case is wrong." And this remark is quoted with approbation by the Supreme Court of Massachusetts, in the case of *Bartlett* v. *Nye*, 4 Met. 378. And, finally, the doctrine of this case has been distinctly questioned by the United States Supreme Court, in the case of *Vidal* v. *Girard's Ex'rs*, 2 How. 127, 192, 196. And the Court came to the conclusion that charitable uses may be enforced in chancery, upon the general jurisdiction of the Court, independent of the statute of Elizabeth.

By the R. S. of this State, c. 77, § 8, we have jurisdiction, as a court of equity, of all cases of trusts, whether arising by implication of law, or created by deed, or by will. And, in cases of bequests for charitable and other purposes, we are satisfied, upon a careful examination of all the authorities, that our jurisdiction is not exclusively derived from, nor restricted by the statute of 43 of Elizabeth. *Burbank* v. *Whitney*, 24 Pick. 146. Before that statute, courts of chancery may not have had power to enforce trusts for indefinite charities, especially if no trustees capable of taking were interposed. And, even since that time, if the bequest is so imperfect and vague that the intention of the testator cannot be ascertained, it will be declared void. Thus, a bequest to A. B., in trust, without any designation of the trust, would be held to be void, or a trust for the heirs at law. But if the trust is expressed, and is sufficiently definite to be understood, and is consistent with the rules of law, it will be enforced, either under the statute of Elizabeth, or independent of it. And, though the bequest is for charitable purposes, "if the charity is definite in its objects, is lawful, and is to be executed and regulated by trustees, who are specially appointed for the purpose," a court of chancery has jurisdiction over it, independ-

Tappan *v.* Deblois.

ently of the statute, derived from its general authority over trusts. 2 Story's Eq., § 1187.

In the case at bar, the object is sufficiently definite to be understood. A bequest "to the cause of Christ," has been held to be sufficiently certain. *Going* v. *Emery,* 16 Pick. 107. "The cause of peace" is not more doubtful, or indefinite.

That the object is lawful, and the bequest to trustees specially named, and capable of taking, is not denied. No suggestion is made that they will not appropriate the property according to the intention of the testator. Should they fail to do so, the trust may be enforced by the Court in the State where they reside.

Nor is there any doubt or uncertainty as to the beneficiaries of this trust. The testator very clearly intended that the property should be paid to the American Peace Society. This society was made the *cestui que trust.* A bequest "to the Universalist religious denomination, in the county of Berkshire," was held not to be void for uncertainty, though no trustees were named in the will. And trustees were appointed by the Court to carry the trust into effect. *Universalist Society in North Adams* v. *Fitch,* Law Reporter, August, 1858; not yet reported.

In the case before us, the trustees will have discharged their trust, when, after receiving the property, they shall have paid it to the executive committee of the American Peace Society. Beyond that, neither they, nor the Court, are responsible for its disposal. The testator, when living, had a right to give his property to that society. He had the same right, by his will, to direct his executors, or his trustee, to appropriate it in the same way at his decease. That such was his intention, as expressed in his will, there cannot be the slightest doubt; and it is our duty to see that this intention is carried into effect. The balance of the estate, remaining in the defendant's hands, upon the settlement of his final account of administration, must be paid over to the plaintiffs.

TENNEY, C. J., HATHAWAY, MAY, and GOODENOW, J. J., concurred.