MICHAEL JENCO, Admr., Appellee, *vs.* THE ILLINOIS STEEL
COMPANY, Appellant.

*Opinion filed February 20, 1908—Rehearing denied April 10, 1908.*

1. MASTER AND SERVANT—*what constitutes negligence by steel
company.* Where explosions in a dust-catcher connected with a
blast furnace are of frequent occurrence and of dangerous char-
acter it is the duty of the master to exercise reasonable care to
minimize the dangers therefrom; and if there are unnecessary and
unused openings in the dust-catcher, which permit the red-hot dust
to be blown outside, thereby endangering servants working about
the premises, it is the duty of the master to close them up.

2. SAME—*when servant of a steel company assumes risk of in-
jury.* An employee of a steel company who goes into a shanty for
purposes of his own, despite his foreman's warning to keep out of
it, and with knowledge that the shanty is a dangerous place on ac-
count of explosions in a near by dust-catcher, which would throw
red-hot flue-dust into the shanty, assumes the risk of injury from
that source, and the company is not liable where he is killed by
such an explosion while in the shanty.

APPEAL from the Appellate Court for the Second Dis-
trict;—heard in that court on appeal from the Circuit Court
of Will county; the Hon. DORRANCE DIBELL, Judge, pre-
siding.

This is an action on the case for damages, brought
against the Illinois Steel Company for negligently causing
the death of Michael Jankovich. The administrator recov-
ered a judgment in the circuit court of Will county for
$4000, and that judgment has been affirmed by the Appel-
late Court for the Second District. The Illinois Steel Com-
pany by its further appeal brings the record to this court
for review.

At the close of the appellee's evidence the appellant re-
quested the trial court to direct a verdict in its favor. This
motion was overruled. The only error complained of in
this court is the refusal of the trial court to grant the per-
emptory instruction,

Michael Jankovich, an employee of appellant, was so burned by an explosion of hot flue-dust about five o'clock on the morning of May 21, 1906, that he died three days afterwards. Appellant operated furnaces for the manufacture of steel. Appellant offered no evidence. The following statement made by the Appellate Court shows the facts which appellee's evidence fairly tended to establish:

"The evidence shows that in smelting iron ore in blast furnaces a large amount of dust is created and blown out by the blast; that much of this dust is unmelted ore and is saved and run through the furnace again; that appellant's furnaces Nos. 1 and 2 are fifty or sixty feet apart; that No. 1 is eighty-five feet high and twenty feet in diameter; that· a dust-catcher is connected with the top of the furnace to catch the dust out of the gas; that the blast is heated in what is termed the 'stove,' which is a structure fifteen feet in diameter and seventy-five feet high; that the dust-catcher connected with furnace No. 1 is located on the south side of the stove, and is a circular structure of about the same height and diameter as the stove and is constructed of brick; that there were three openings at the bottom of the dust-catcher about three or four feet wide and seven feet high, or of sufficient size to permit a man to wheel a loaded wheelbarrow through them; that one of these openings was on the east, one on the south-west and one on the north-west; that in the interior of the dust-catcher was a funnel-shaped receptacle called the 'down-comer,' which received the dust as it fell from the flues; that at the bottom of the funnel was a bell valve worked by a lever, which, when raised, permitted the collected dust to run out; that the stock-house wall is eight or ten feet west of the dust-catcher and is twenty feet high; that north of the dust-catcher was a wall connected with the stock-house wall, extending east and west and about one hundred feet high; that there were no doors or openings in either wall; that the dust-catcher was located about twenty feet south-east of the angle formed.

by these two walls, and in this angle was a hot-blast shanty about six by eight feet and seven feet high, in which was kept the pyrometer, which was used to indicate the heat of the furnace; that the door to this shanty was on the south side of it, with a window on the east side; that the pyrometer for furnace No. 1 was inside this shanty, with its face towards and less than a foot from the window, lighted by an electric light, so that it could be read from the outside; that up to about a year before this accident the red-hot flue-dust had been dumped on the floor of the dust-catcher from the down-comer and shoveled into wheelbarrows and removed in that way, but about a year before the accident a chute seven or eight feet wide at the top but smaller at the bottom was put in, leading from the bottom of the dust-catcher down into the stock-house, which was located underneath the floor of the stove and dust-catcher, with a slide in the bottom of the chute, so that when dust was wanted the slide would be opened and the dust would run out into 'buggies' below; that this chute dispensed with the use of the wheelbarrows and men for removing the dust through the opening, but they had not been closed in any way; that during the daytime a man was in charge of the dust-catcher, whose duty it was to empty the down-comer through the bell valve into the chute at regular intervals; that during the night no person had this duty but it was done by whatever employee the foreman ordered to empty it; that Jankovich, the deceased, was the night man who had charge of the hot-blast, and he had a helper, Bazik; that the pyrometers had to be read every fifteen minutes and a record kept of them in shanty No. 2, which was the one Jankovich had charge of, while Bazik looked after No. 1, and if either one did not have time to read his pyrometer the other read and recorded it; that the foreman under whom Jankovich and his helper worked was Andrew Benson; that the foreman of the stock-house, which was on the lower floor, was McGoogin, who had nothing to do with Jankovich or his

helper; that when Jankovich and his helper came to work the evening before the accident they took their dinner pails and coats into shanty No. 1, and there was a burst of dust at that time which frightened Jankovich, who had worked there several years; that at half-past eleven the night of the accident, Jankovich, upon the order of Benson, had emptied the down-comer into the chute and the foreman from the stock-house turned a hose on the dust, sticking it into the dust and leaving it there with the water running from the hose into the dust; that at the time of the explosion some of the men in the stock-house below opened the slide in the chute to run the dust into a buggy, and this appears to have in some way, by mixing the water or saturated dust with the red-hot dust, caused a very violent explosion, which threw the dust up the chute into the dust-catcher and out through the north-west opening and into shanty No. 1, the door of which was in line with the north-west opening of the dust-catcher, covering the floor of the shanty with red-hot dust to a depth of two or three feet. Jankovich, who at the time the explosion occurred was in this shanty for some reason which is not definitely shown by the proof, was so burned by the dust that he died."

Appellee's declaration consists of six counts. The first count of this declaration charged a violation of the duty of appellant to furnish appellee's intestate a reasonably safe place in which to perform his work, by negligently failing to close the openings at the base of the dust-catcher. The second and third counts charge negligence in locating the shanty in line with the door of the dust-catcher. The fourth count charges improper and negligent management of the dust-catcher. The fifth count charges negligent construction of the dust-catcher, while the sixth charges that the dust-catcher and other appliances were out of repair.

GARNSEY & WOOD, (KNAPP, HAYNIE & CAMPBELL, of counsel,) for appellant.

J. J. WELLNITZ, and J. W. DOWNEY, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

There is no proof which tends to support the charge that the dust-catcher or any of the other instrumentalities used by appellant were out of repair, nor is it claimed by appellee that the charge contained in the fourth count, of improper and negligent management of the dust-catcher, is sustained. There is no proof in the record that the method of operating the dust-catcher and handling the dust after it came down was any different on the night of the accident from the usual method employed by appellant in doing this work. Appellee's case, therefore, must rest on the charges of negligence in the other counts, all of which charge, in some form, a violation of the duty of appellant to exercise reasonable care to furnish appellee's intestate a reasonably safe place to work.

It will be noted that appellee does not charge that the explosion which injured Jankovich was caused through negligence, but, apparently assuming that such explosions are liable to occur, the contention is that it was the appellant's duty to close the openings in the dust-catcher or move the shanty out of line with the opening, so that when such explosions did occur no injury would result to persons working around the dust-catcher and shanty. Regarding the question of negligence charged as one of fact, we are inclined to agree with the trial and Appellate Courts. In our opinion the evidence establishes the charge that leaving these openings in the dust-catcher was negligence. Under the old method of removing the dust by wheelbarrows from the bottom of the dust-catcher these openings were necessary to enable the men to go in and out in removing the dust, but after the chute was constructed, by means of which the dust was conveyed to the stock-room, no reason is assigned why the openings in the dust-catcher might not have been closed. It is shown satisfactorily that a number of

similar explosions had occurred and that other persons than Jankovich had been injured by such explosions. The last of these explosions before the one in question occurred about six o'clock the evening before Jankovich was burned. The frequency of these explosions and the dangerous consequences liable to follow required the appellant to take all reasonable precaution to minimize the dangers to be apprehended therefrom.

Conceding appellant's negligence to be established as charged, appellee is not entitled to recover unless the evidence fairly tends to prove that appellee's intestate was free from contributory negligence and that the injury did not result from an assumed risk. Upon the question of contributory negligence we think the case was properly submitted to the jury. Upon the question of assumed risk the law is well settled that where defects in the appliances or conditions connected with the particular service in which the employee is engaged are equally well known to him and the master, the latter is not liable for injuries resulting to the servant therefrom. If a servant, under such circumstances, continues in the service of the master without complaint and without any promise from the master to remedy the defects, he assumes the risk and cannot recover for an injury resulting therefrom. (*Christiansen* v. *Graver Tank Works,* 223 Ill. 142.) During the six or seven years that Jankovich worked around these furnaces it must be assumed that he became entirely familiar with all visible and open surroundings and circumstances connected with the service. The proof is, that Bazik, who worked with Jankovich as a helper, knew of the previous explosions. He and the deceased worked together at the same employment, and Jankovich's opportunities for becoming familiar with conditions were as good as Bazik's. All of the witnesses who worked about the dust-catcher were familiar with these explosions. The evidence clearly shows that the explosion that occurred at six o'clock the evening before was known

to Jankovich. He and Bazik were in shanty No. 1, which is the place where Jankovich was injured the following morning, at the time of the six o'clock explosion. A column of red-hot dust came from the opening in the dust-catcher to the door of the shanty. Jankovich closed the door of the shanty and this saved himself and Bazik from injury on that occasion. After this occurrence Jankovich went to Benson, his foreman, and informed him of the occurrence. Benson told him that "the best thing he could do was to keep out of there." It thus appears that Jankovich was familiar with the opening in the dust-catcher, with the location of the shanty and the fact that explosions of dust were liable to occur at any time. He also knew, from his experience on the evening before, that if a dust explosion occurred the hot dust would be thrown out of the door of the dust-catcher toward the door of the shanty, thus making the shanty a place of danger; and, in addition to his own knowledge, he had been warned by his foreman that the best thing he could do was to "keep out of the shanty." With this knowledge of conditions Jankovich must be held to have assumed the risk of going into the shanty. He was not ordered there by his foreman. His purpose in going there at the time in question is not clearly shown. Under the law as announced by many decisions of this court it must, we think, be held that the injury complained of resulted from an assumed risk.

It follows from the foregoing views that the trial court erred in not directing a verdict for appellant.

The judgments of the Appellate and circuit courts are reversed and the cause remanded to the circuit court.

*Reversed and remanded.*