**PACIFIC EMPLOYERS INS. CO. v. GAGE.**

No. 14813.

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 10, 1947.

Rehearing Denied Feb. 14, 1947.

Rawlings, Sayers & Scurlock and Nelson Scurlock, all of Fort Worth, for appellant.

Grindstaff, Zellers & Hutcheson and A. E. Zellers, all of Weatherford, for appellee.

SPEER, Justice.

A Workmen's Compensation case. Showing of "good cause" is the most seriously contested issue.

Appellant Pacific Employers Insurance Company is the carrier of compensation insurance for Consolidated Vultee Aircraft Corporation, the employer, and appellee Wesley E. Gage is the injured employee.

Appellee is alleged to have received an accidental injury while in the course of his employment on October 14, 1944, resulting in the loss of an eye. He filed claim for compensation with the Industrial Accident Board (about forty-five days late). Claim was entertained by the board and a final award made on December 31, 1945. Appellant timely appealed from the award to the district court having jurisdiction, seeking to set aside the award.

In due time appellee answered generally and specifically by cross action for compensation. He alleged a cause of action and asserted timely filing with the board and

alternatively "good cause" for a delay in filing. This plea will be noted later. Appellant filed a verified plea of failure by appellee to timely file claim, in response to appellee's cross action.

Judgment for appellee was entered on a jury verdict, and this appeal was perfected by appellant carrier from that adverse judgment.

First point of error relied upon is the court's refusal to give appellant's requested peremptory instruction. The motion for an instructed verdict was based upon a lack of any evidence showing good cause for failure to file claim with the board within six months after date of injury. In this connection appellant referred to parts of the testimony relied upon by appellee to show good cause, and by reference to the statement of facts we find an abundance of testimony on the point to raise a jury issue. Court should not instruct a verdict if there is reasonable grounds for ordinary minds to differ as to conclusions to be drawn from the testimony. 41 Tex.Jur. 939, §§ 169 and 170; Woods v. Townsend, Tex.Sup., 192 S.W.2d 884–886. If the testimony is conflicting it is to be construed in the light most favorable to the adverse party and against the motion for an instructed verdict. The court will, for the purposes of the motion, presume to be true all testimony favorable to the opposite party, who is entitled to the most favorable construction that it will properly bear and is entitled to the benefit of all reasonable inferences arising therefrom. All contradictory evidence is left out of view. City of Houston v. Chapman, 132 Tex. 443, 123 S.W.2d 652; McAfee v. Travis Gas Corp., 137 Tex. 314, 153 S.W.2d 442; Burroughs v. Smith, Tex.Civ.App., 294 S.W. 948, writ refused; Anglin v. Cisco Mortg. Loan Co., 135 Tex. 188, 141 S.W.2d 935; Texas Emp. Ins. Ass'n v. Ferguson, Tex.Civ.App., 196 S.W.2d 677, writ refused, no reversible error. We overrule the point.

Points five, six and seven complain (5) because of submitting issues 3 and 4, (6) admitting in evidence that the personnel department of the employer advised appellee that he was not entitled to compensation, because of a lack of pleadings, and (7) submitting issue 7 because there were no pleadings to support the evidence admitted under it.

Issue 3 inquired if the personnel department of the employer advised appellee that he was not entitled to compensation. The question was answered in the affirmative. In answer to issue No. 4, the jury found that the advice inquired about in No. 3, constituted good cause for failure to file claim in time. As above indicated, point 6 complains because of the admission in evidence of what the personnel department of the employer told appellee. when, it is claimed, there were no pleadings to that effect.

We must determine whether or not the pleadings are sufficient to warrant the admission of the testimony. If insufficient, of course the testimony should not have been admitted nor the issues submitted; but if sufficient then no error is shown.

Appellee alleged that the reason for not having filed his claim with the board sooner than he did, was because he was not apprised of the cause of the loss of vision until immediately prior to the time he did file same.

He further alleged:

"The physicians who treated him told him in substance that they could not find any cause for his loss of vision of said eye, and that it 'just happened'; that one of said physicians told him that there was no cause for his loss of vision of said eye and reasonably caused this defendant (appellee) to believe that there was no connection between either the strain or the extreme light and the loss of his vision; *he was advised that the compensation carrier was not liable for such loss of vision;* (our emphasis); that the defendant (appellee) believed said representations and relied thereon and was thereby induced to refrain from filing a claim for compensation or giving notice as is required by law; that said representations made by said physicians, together with the lack of knowledge on the part of defendant as to the cause of said blindness constituted a good cause for his failure to file said claim * * * until the same was given and filed; that as

soon as this defendant learned the cause, of the loss of vision, he immediately filed, or caused a claim to be filed."

Rule 45, Texas Rules of Civil Procedure, provides among other things that pleadings in the district and county courts shall be by petition and answer in writing and shall consist of a statement in plain and concise language of plaintiff's cause of action, or the defendant's ground of defense. That if an allegation be evidentiary or a legal conclusion it shall not be ground for objection when fair notice to the opposite party is given by the allegations as a whole. All pleadings shall be so construed as to do substantial justice.

■■ Appellant did not present a special exception in any form to appellee's cross-petition asserting good cause. Appellant did not attempt to disprove that appellee received the injury complained of while in the course of his employment. Of course the burden was upon appellee to establish each material element of his case. He did not file claim within six months from date of the injury, and he was obliged to establish "good cause" for having failed. His pleading must be construed, if it can be done, so as to do substantial justice. This being a compensation case, the laws applicable thereto must be given a liberal construction; as held by our courts, if there is a reasonable doubt, it will be resolved in favor of compensation. Texas Employers' Ins. Ass'n v. Moreno, Tex.Com. App., 277 S.W. 84; Security Union Ins. Co. v. McClurkin, Tex.Civ.App., 35 S.W.2d 240, writ refused; Fidelity & Casualty Co. v. McLaughlin, 134 Tex. 613, 135 S.W.2d 955. The whole Act is to be liberally construed. Mingus v. Wadley, 115 Tex. 551, 285 S.W. 1084; American Mut. Liability Ins. Co. v. Parker, Tex.Sup., 191 S.W.2d 844.

■ A strict rule of grammatical construction may not always be applied to pleadings. Nor is such a rule advisable to an understanding of some court opinions, more especially of this court.

Adverting to the above quoted pleading relating to good cause, we find it ambiguous. Syntax or sentence construction has reference to the relation between words, phrases and clauses in sentences. Under this rule, all elements of the sentence that are parallel in thought should be parallel in form. To properly understand a sentence we look to mode, tense, person and voice. By "voice" we observe whether the subject performs or receives the action expressed by the verb—voice is either active or passive—the subject is either actor or is acted upon. It will be observed by the pleading referable to what the physicians told appellee, they are the actors and he, in that sense, is acted upon. These parallel clauses are introduced by the relative pronoun "that". We then come to the clause in controversy, there, it is said: *"he was advised that the compensation carrier was not liable."* etc. Thus an independent clause, with its change in voice of the verb, breaks into the sequence of the dependent clauses, and perhaps the meaning shifts with the structure of the sentence as a whole. "He" becomes the subject and is the actor, as were the physicians in the clauses relating to them.

■ The somewhat technical distinctions above mentioned should not be controlling in all cases where the meaning of pleadings is involved; yet, they are mentioned here only to show that the language is susceptible to more than one meaning. In the absence of exceptions calling for a more definite allegation, the pleading should be given such a construction as will do substantial justice and not defeat it.

■ When appellee offered to prove what he had been told by the personnel department of his employer, appellant objected upon the ground that there was no pleading by appellee. By the objection the court had the pleadings called to his attention, and having considered them, admitted the testimony; thus, he obviously considered them in the light we have done. Appellant saved its objections and exceptions at all times throughout the trial, including the submission of issues and to argument by counsel of that evidence and in its motion for new trial, forming the basis for its points of error in this court. We have concluded that the pleadings were sufficient, absent special exceptions, that the testimony was admissible, and that

submission to the jury was proper as against the objections made.

■ Eighth point complains because of argument relating to what the personnel department of employer told appellee. In view of what has been said, there was no error in permitting argument on this phase of the testimony. The bill of exception shows that appellant's counsel had said in his argument substantially that the testimony does not show that the ladies in the personnel department had made any study of the Workmen's Compensation law, and no testimony from appellee that he thought they had done so; therefore it was unreasonable to think that an ordinarily prudent man would rely upon what they told him. The argument complained of was to the effect that: They say those little girls in the personnel office didn't know the law—they didn't know how to advise people they were placed there to advise—Mr. Gage should not have paid any attention to them—but they are willing to take advantage of his failure to listen to them, when they are placed there for that purpose. The last statement, "When they are placed there for that purpose" is the basis for appellant's main complaint. True, the personnel department was that of the employer, but no effort was made by appellant to show lack of authority of that department to advise employees in matters involving their rights—the department did assume to advise appellee and he says he relied upon it. We are not holding that the advice so received was a sufficient legal excuse for the delay in filing claim; but that the argument made was not an unreasonable deduction of counsel in arguing the point to the jury.

■ Points of error Two, Three and Four complain of the answers to special issues 6, 7 and 8 upon the ground that such findings were "contrary to the overwhelming weight and preponderance of the evidence." Special issue 6 was conditioned upon the jury having answered No. 5 in the affirmative. No. 5 was answered affirmatively that the physicians who treated appellee had advised him that the rupture of the blood vessel in his eye "just happened" and "without any cause". Issue No. 6, of which complaint is made, and its answer found that the representations made by the physicians (referred to in No. 5) constituted good cause for appellee's failure to file his claim sooner than he did.

Special issue No. 7 complained of was also conditioned upon affirmative answers to Nos. 3 and 5. By No. 3 it was affirmatively found that the personnel department had informed appellee that he was not entitled to compensation. In response to No. 7, of which complaint is made, it was found that both the representations made by the personnel department and by the physicians when taken together constituted good cause for appellee not having filed his claim sooner.

Special issue No. 8, forming the basis for Point of Error No. Three, inquired and the answer found that appellee did not fail to exercise ordinary care in failing to sooner file his claim after being informed by Dr. Howard that it was possible that his loss of vision was caused by working under the bright light (described in the testimony) that he (Dr. Howard) could find no other cause for it, and believed he (appellee) was entitled to compensation.

The testimony upon which the answers to the mentioned special issues was based is lengthy and somewhat confusing. None of the doctors whom appellee had consulted testified at the trial; apparently the parties were content to accept appellee's version of what they had told him. Obviously there was a slight difference prevailing among the physicians as to the causes of appellee's trouble. It seems that whether or not appellee relied upon what his physicians had told him was a matter upon which the jury could form its own conclusions from the testimony. Martin v. Travelers Ins. Co., Tex.Civ.App., 196 S.W.2d 544.

Article 8307, sec. 4a relating to notice and filing of claim, provides in effect that a claimant must give notice to the employer or association within thirty days and file claim for compensation with the Industrial Accident Board within six months after the date of injury, as a prerequisite to establishing such claim. This condition is found in that article: "For good cause the board

may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing the claim before the board."

It is obvious from the record that the Industrial Accident Board considered that appellee's claim fell within the exception provided by law and made its award thereon, from which award the appellant (carrier) appealed to the courts.

In Martin v. Travelers Ins. Co., Tex.Civ. App., 196 S.W.2d 544, it was held that the test of "good cause" for delay in filing a claim before the Board is that of prudence; that is, whether the injured employee has prosecuted his claim for compensation with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances, and that the question as to whether he had exercised such degree of diligence has been ordinarily held to be a question of fact. Similar pronouncements by our courts may be found in many decisions but because the cited case is perhaps the last expression on the point, and we believe a correct one, we refrain from citing other cases.

■ It is not contended under the points of error now being discussed that the evidence in the instant case, taken most strongly in favor of appellee, admits of only one reasonable conclusion negativing "good cause", so as to make the question one of law and not of fact. The contention of appellant, under these points, is that the jury findings on good cause are against the "overwhelming weight and preponderance of the evidence." As we view the testimony as a whole, it was ample in probative value to support the verdict, if believed by the jury. The jury did believe it and so answered the inquiries. In such circumstances as this, appellate courts may not substitute their own conclusions or findings for those of the jury, even if the courts would have decided the questions differently had they been acting in the place of the jury.

As above indicated by us, the principal complaint of appellant is that the trial court admitted testimony and submitted special issues based upon the pleadings above set out, concerning information received by appellee from the personnel department of his employer. We note by the verdict that in response to special Issues 5 and 6 the jury found that "good cause" existed for appellee's failure to file claim sooner than he did, based upon what his physicians told him from time to time, and in response to Special Issue No. 8 it was found that after appellee was informed by Dr. Howard that it was possible that working under the light (described in the testimony) was the cause of his loss of vision and that the doctor could find no other cause for it and that appellee was entitled to compensation, he did not fail to exercise ordinary care in the delay of filing claim. These issues and answers had no reference whatever to the information received by appellee from the personnel department of his employer and supported the judgment of the court as entered.

■ Even if we are in error in holding that the pleadings were sufficient to admit evidence of what was told appellee by the personnel department and to warrant the submission of issues thereon, since the judgment is supported by the verdict based on the doctor's advice, we do not believe the judgment should be reversed on that account. Rule 434, Texas Rules of Civil Procedure. Under the cited rule, we are of the opinion that the error, if it was such, did not amount to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case.

Assuredly it did not prevent the appellant from making a proper presentation of the case to the appellate court.

■ Points of Error Nine and Ten complain of arguments made to the jury by appellee's counsel. The bills of exception relied upon are necessarily of great length and will not be copied in full. We do not have all the arguments made but the bills of exception bear no qualifications and they must be accepted as approved. A portion of one of the offending arguments reads: "We have here, a man out there, not versed in the law—working in the grind and grime of a war industry—it was then

producing planes for the emergency, covered by a policy of insurance that had been bought and paid for across the counter. He lost an eye and the sum and substance of it is, they don't want to pay for it. That is all there is to it. And the only reason they ask you—the only thing they want you to do is to find that the poor man did not have any excuse for waiting 45 days beyond his six months period, in order to file his claim."

Appellee's counsel further argued in effect: We may not know what happened out there, but we do know that here is an insurance company that took money to protect the defendant (appellee) and to pay him for the loss of his eye, if he lost it in the course of duty. So far as you are concerned it is admitted that he lost his eye in the line of duty. We know and you know he has not been paid a thin dime for that loss. Their program is to get you (the jury) to find that he had no good cause for not filing his claim 45 days sooner than he did; that is what its all about, when stripped down.

▇▇▇▇ Appellant contends that the arguments were inflammatory and highly prejudicial and informed the jury what effect their answers would have upon the judgment to be entered by the court. It is the settled law that an attorney may not inform the jury of the effect of any answer they make would have upon the judgment of the court. We have read the whole of the bills of exception and do not find that counsel advised the jury of any effect their verdict would have on the judgment. He was obviously explaining to the jury that appellant wanted them to find against appellee having good cause, and we may infer that he wanted them to find that good cause existed. In Lowrance v. Kenworthy, 138 Tex. 132, 157 S.W.2d 879, 880, it was held that counsel did not commit reversible error when he advised the jury, "If they found the defendant guilty of negligence and then answered the special issue that it was an unavoidable accident, the answers would result in a conflict." Moreover, counsel is not required to confine his argument to such mild and vague statements about the testimony that a juror may not know what he believes the testimony warrants the jury in finding thereunder. It may be observed just here that it requires no great amount of technical legal knowledge for the average juror to understand that a lawyer is endeavoring to induce him to place such construction on the testimony as that placed thereon by the speaker and that if the juror does that and so answers the issue, he naturally knows that it will be favorable to the side of the case represented by the lawyer whose views are shared by the juror. It is never an infringement of the rule to apprise a juror of what he already knows. Continental Oil Co. v. Barnes, Tex.Civ. App., 97 S.W.2d 494, writ refused.

▇▇▇▇ Our courts have extended much latitude to counsel, from time to time, granting them the right to place their construction and interpretation upon the testimony and to make all reasonable deductions therefrom. It may be said in this case that counsel's comments contained some rather vigorous metaphors, yet we do not believe them to be inflammatory nor prejudicial in the sense that they were unreasonable or unfair. In many instances, perhaps the testimony warrants an argument that seems harsh or such as would inflame the mind of a juror against the theory of the opposite side, and in all such instances it can be said to be prejudicial to his interests, but not to his rights; the test is, were such comments unreasonable or unfair in the eyes of the law?

We conclude that no reversible error is shown by the points presented and that the judgment of the trial court should be and is accordingly affirmed.

McDONALD, C. J., dissents.

McDONALD, Chief Justice.

I believe that the trial court erred in admitting evidence as to the statements made to appellee by the women in the personnel office of the employer.

The good cause allegations are all found in the tenth numbered paragraph of appellee's pleading. In the opening sentence

appellee alleges that he filed his claim for compensation within six months after the date of the injury in the way and manner provided by law. In the second sentence of the paragraph he alleges, in the alternative, that good cause existed for failure to file his claim within the required time and up until he did file claim, to quote, "for the reason that he was not apprised of the cause of his loss of vision until immediately prior to the time he filed said claim and gave said notice." The third sentence begins with the words, "In this connection he alleges", and proceeds in several clauses, separated by semi-colons, to allege that the physicians told appellee that they could not find the cause of the loss of vision, that he believed them, etc. In the middle of this long sentence is found the clause, "he was advised that the compensation carrier was not liable for such loss of vision." The long sentence is concluded with this summary, "that said representations made by said physicians—together with the lack of knowledge on the part of the defendant as to the cause of said blindness—constituted a good cause for his failure to file said claim and make said notice up until the same was given and filed; that as soon as this defendant learned the cause, or probable cause, of the loss of vision, he immediately filed or caused a claim to be filed and notice of injury to be given." Thus, it is seen that in his opening sentence he avers that the reason for the delay in filing was the fact that he was not apprised of the cause of his loss of vision until immediately prior to the time he filed claim and gave notice of the injury. He begins the next sentence with the phrase, "In this connection", referring clearly, it seems to me, to what he had just said in the preceding sentence. He concludes the sentence by saying that the representations of the physicians, together with his own lack of knowledge as to the cause of his blindness, constituted good cause for the delay in filing, and that he filed his claim as soon as he learned the cause of his loss of vision. The paragraph then concludes with the following sentence:

"Plaintiff alleges that he was first advised about May 28, 1945, that there was a probable connection between the loss of vision and the strain or the working near the bright light as above alleged and that he immediately wrote to the Industrial Accident Board."

The conversation between appellee and the women in the employer's personnel department took place many weeks before the expiration of the six months period within which he was required to file claim for compensation, and several months before the claim was actually filed. Nowhere in appellee's pleading is it said that the remarks of these two women constituted good cause for failure to file the claim, either within six months or up to the time it was filed. It is not alleged when he learned of the falsity of their representations to him. Obviously, if the remarks of these two women had been relied on for good cause, then it would have been necessary to allege and prove that he did not learn of the falsity of their remarks until he actually filed his claim. When the allegations of good cause are examined in their entirety, it seems to me that they charge only that the physicians misstated to the appellee the cause of his loss of vision, and that as soon as he learned the cause of his loss of vision he filed claim.

It is elementary that a pleading must give fair notice of what the pleader expects to prove. I cannot believe that a lawyer of average experience, diligently representing a compensation carrier, would suppose on reading the pleading under discussion that the claimant would seek to establish as good cause for delay in filing his claim the fact that two women in the employer's personnel department told him, many months before he filed his claim, that he was not entitled to compensation.

When the record is examined as a whole, the error in admitting evidence of the matter, coupled with submission of issues about it to the jury, and the argument of counsel concerning it, was of such magnitude that I do not believe the case is a proper one for the application of Rule 434.