## KING v. KING et al.

### No. 6151.

Court of Civil Appeals of Texas. Amarillo.

June 11, 1951.

Rehearing Denied Sept. 10, 1951.

Harry Bunnenberg, Vernon, for appellant.

Storey, Storey & Donaghey, Vernon, Bullington, Humphrey, Humphrey & Fillmore, Wichita Falls, for appellees.

LUMPKIN, Justice.

This appeal is from a verdict and judgment setting aside the will of Jessie King, deceased. The testatrix had five children: the appellant, Carl King; and the appellees, Ralph D. King, Earl J. King, Mrs. Hettie Pitts and Miss Minnie A. King. The will, which was executed on May 16, 1946, be-

queathed to the appellees only $500 each, with the condition that none of them contest any part of the will. The residue of the estate—valued at more than $139,000—was bequeathed to the testatrix' oldest son, the appellant, Carl King, after the payment of debts, the expenses of her last illness and funeral expenses. The will named the appellant independent executor without bond.

On January 1, 1948, the testatrix died at the age of 82 years from a cerebral hemorrhage. Nineteen days later the will of Jessie King, deceased, was admitted to probate by the county court of Wilbarger County, Texas, and the appellant was appointed independent executor of the estate. On April 13, 1949, after this judgment became final, the appellees filed a new and independent cause in the probate court of Wilbarger County in which they sought to set aside the will of Jessie King, deceased, together with the order admitting it to probate, on the ground that the testatrix was mentally incompetent to write a will. On July 6, 1949, an order was entered by the probate court denying the relief sought and from this order an appeal was perfected to the district court.[1]

Trial in the district court was to a jury. In answer to a single special issue the jury found that on May 16, 1946, the testatrix did not possess the testamentary capacity to write a valid will. In accordance with this verdict, the court set the will aside and held that the estate of Jessie King, deceased, vested in her heirs at law in accordance with the Law of Descent and Distribution of the State of Texas. It is from this judgment that the appellant has duly perfected this appeal.

The appellant contends that the court was without jurisdiction of the independent executor of the estate of Jessie King, deceased. He insists that the failure to name the independent executor as a party

defendant constitutes fundamental error and that, therefore, the case should be dismissed. He asserts that the only necessary party defendant to a proceeding seeking to set aside a will after probate is the independent executor named in the will and appointed by the probate court; that he was the independent executor of the will and estate of Jessie King, deceased; and that as such he was not sued, cited or served with process, neither did he appear nor intervene as the duly appointed independent executor. Therefore, he insists, there was a fatal misjoinder of the only proper, necessary and indispensable party defendant, i. e., the independent executor. This point was not raised by the appellant until after judgment was rendered.

As we have seen, on April 13, 1949, approximately fifteen months after the will was probated and the appellant qualified as independent executor, this suit, designated as a "Motion to set aside Will of Jessie King, Deceased," was filed in the county court. In it the appellees complained of Carl King, sometimes referring to him as the defendant and sometimes as the respondent. They did not complain of Carl King as the independent executor. They attached a copy of the will to their motion, and they prayed that "citation issue to the respondent, Carl King." Citation did issue, was directed to and served upon the appellant, Carl King. But no process to or upon Carl King as independent executor of the will and estate of Jessie King, deceased, or upon him in any representative capacity was ever issued or served. In his answer and his first amended original answer, filed in the county court, the appellant alleged that he was the duly qualified independent executor. But the judgment in the county court, the notice of appeal to the district court, the bond, and the pleadings in the district

---

1. Before the case was tried in the district court, however, the appellees, on September 27, 1949, filed in the probate court an application for temporary administrator. From the order appointing a temporary administrator, an appeal was perfected to the district court, and from an order of the district court, which was substantially the same as that entered by the probate court, an appeal was perfected to this court, where the judgment of the district court was reversed and rendered. King v. King, Tex.Civ. App., 230 S.W.2d 335, writ ref.

court referred to the appellant as an individual and not as a representative of the estate.

■ Although the pleadings as a whole possibly indicate to a reasonable certainty that the appellant was sued in his representative capacity as independent executor, the record fails to reveal a non-joinder of the indispensable party defendant for another reason. The appellant was the sole beneficiary under the terms of the will. Miller v. Dunagan, Tex.Civ.App., 99 S.W.2d 434; 67 Corpus Juris Secundum, Parties, § 100, page 1096. This same problem is found in the case of Johnson v. Donley, 133 Kan. 73, 299 P. 270. In that case an action to set aside a will was instituted against W. A. Donley. By the terms of the will Donley was named as sole beneficiary and the executor of the estate. The objection was made that the action must be brought against the executor as well as against the individual. But the Supreme Court of Kansas said it was not essential that Donley, as executor, be made a party to the suit since the only party made defendant was W. A. Donley as sole beneficiary. Since the action to set aside the will was timely begun, the fact that the defendant as an executor was not formally made a party was not fatal to the action.

■ In this case the appellant, after the contest was filed, was the sole beneficiary under the will. According to its terms, the other legatees, by contesting the will, had removed themselves as possible beneficiaries. Therefore, if the will was valid, title to the property vested immediately in the appellant subject to the debts of the estate. White v. White, 142 Tex. 499, 179 S.W.2d 503, 505; Article 3314, Vernon's Annotated Civil Statutes. Since more than one year had elapsed from the order appointing the appellant independent executor, we may assume that the estate had been terminated. Articles 3509, 3602. The estate is possessed and controlled by the appellant; there is no evidence that there are any debts due and owing by the estate. The office of independent executor had possibly ceased to exist before the appellees filed this action in the probate court. The appellant defended himself as the sole beneficiary, and the record reveals that he availed himself of every defense which he could have asserted as the independent executor. In our opinion he is estopped from challenging the validity of the trial court's judgment on the ground that he was not named as a party to the suit in his capacity of independent executor. Kopperl v. Sterling, Tex.Civ.App., 241 S.W. 553, writ ref. Pugh v. Turner, 145 Tex. 292, 197 S.W.2d 822; 172 A.L.R. 707.

The appellant contends that the finding of the jury to the effect that the testatrix did not have testamentary capacity at the time she executed the will is contrary to the great weight and preponderance of the evidence.

■ The law governing the issue of mental capacity is well settled. It has recently been reiterated by this court in the cases of Bell v. Bell, Tex.Civ.App., 237 S.W.2d 688 and Jowers v. Smith, Tex.Civ.App., 237 S.W.2d 805. Also see Parr v. Parr, Tex.Civ.App., 207 S.W.2d 187. The burden of proof rested upon the appellees to prove that the testatrix did not know the extent of her estate and the objects of her bounty at the time she executed the will. Howley v. Sweeney, Tex.Civ.App., 288 S.W. 602, 605; Curtis v. Adams, Tex.Civ.App., 275 S.W. 206; Cryer v. Duren, Tex.Civ.App., 164 S.W.2d 752; Boyd v. Frost National Bank, 145 Tex. 206, 196 S.W.2d 497, 168 A.L.R. 1326; 44 Tex.Jur. 917. The jury found that she did not have the testamentary capacity to write a will. Even though the burden of proof was upon the appellees in the trial court to prove that she lacked testamentary capacity, before the appellate court the same rule applies as is used in other cases on appeal: If there is any evidence of probative force to support this finding of the jury, such finding is conclusive and binding on both the trial court and this court. Stovall v. Whatley, Tex.Civ.App., 183 S.W.2d 672; Erwin v. Welborn, Tex.Civ.App., 207 S.W.2d 124, writ ref. n. r. e.

The testatrix was over eighty years old at the time she executed the will. She was substantially wealthy. There is no evidence that she felt unkindly toward any of her children. Mrs. Ida Nabers Summers, an old friend of the testatrix and her children, said she had noticed a change in Mrs. King's mental condition in the later years of her life; that Mrs. King was a woman of strong mental attributes but during the last few years she was childish and relied almost entirely upon her daughter Minnie. Although Miss Minnie King had always lived with her mother, the will failed to bequeath either to her or her widowed sister, Mrs. Hettie Pitts, any of the testatrix' jewelry, dishes, silverware, chinaware, linens, or personal belongings. The evidence reveals that her youngest son, Ralph, had been cited for gallantry in action during World War I. His mother had among her personal effects two life-sized portraits of him, a package of letters she had received from him during the time he served overseas, as well as the identification tags he had worn about his neck. Strangely enough, all of these effects were bequeathed to the oldest son, the appellant, and none of these things was given to her youngest son, who had been sick for a number of years and with whom she had held telephone conversations almost daily.

Among the witnesses testifying for the contestants was Dr. Walter B. Whiting, a physician practicing in Wichita Falls, Texas, and associated with the Wichita Falls Clinic-Hospital. He specializes in the treatment of heart disease and allied conditions. Dr. Whiting testified that he saw and treated the testatrix a number of times between September 18, 1940, and December 19, 1947; that on many occasions she had been a patient at the Wichita Falls Clinic-Hospital; that for a number of years she had been suffering from high blood pressure and hardening of the arteries and that this condition grew steadily worse through the years. He examined and treated the testatrix during January, 1945, when she was about eighty years old. On that occasion he found a very

marked increase in her mental disability. He said she was very much confused— "She had no clear mental response; things were vague in her mind." In addition to his original diagnosis Dr. Whiting found that the testatrix was suffering from senility. He found distinct evidence of general deterioration and concluded that her mind was affected. In June, 1945, he found definite evidence of mental defects and again diagnosed her condition as senility. He said she was of unsound mind at that time. Dr. Whiting's testimony continues:

"Q: State to the Court and jury whether or not, in your judgment and opinion, based upon the matters that you have related, your observations, your treatment, your experience with Mrs. King, whether or not on the 16th day of May, 1946, she, Mrs. King, would have been able to know anything intelligently and act thereon about any business transactions she might have had? * *. * A. I would say she would not. * * *

"Q. Would she have, in your judgment, been able at that time to make an estimate of the type and character and amount of her estate and those who would naturally be entitled to her bounty? * * * A. She would not.

"Q. And those who would naturally be entitled to her bounty? A. She would not."

Another witness was Dr. O. B. Kiel, an internist or diagnostician. He is also associated with the Wichita Falls Clinic-Hospital. The testatrix was his patient from 1940 to the time of her death. His first diagnosis was high blood pressure or hypertension. In 1944 he noticed that her physical condition was "slowly going down hill." In 1945 he made the diagnosis of hypertension heart disease, and on June 15, 1945 he made a diagnosis of senility. His testimony continues:

"Q. Now, Dr. Kiel, I will ask you this additional question, whether or not, based upon the matters that you have related, on May 16, 1946, she, Mrs. Jessie King, would have been able to know anything intelli-

gently about any business transactions which she might have had? * * * A. No, she would not, in my judgment.

"Q. State whether or not she would have been able to make an estimate of the kind and character and the amount of her estate and those who would naturally be entitled to her bounty on that date? * * * A. No, she would not."

■ Dr. A. L. Borchardt, a practicing physician living at Vernon, waited on the testatrix during her last illness. He had examined her in 1941 and stated that she had been suffering with arteriosclerotic cardio vascular disease for about ten years, which he said would affect her mental powers. In our opinion the testimony is of sufficient probative force to substantiate the jury's finding that the testatrix lacked the necessary testamentary capacity to execute a will.

Next, the appellant complains of the admission of those portions of the testimony of Drs. Whiting and Kiel which we have quoted above. He contends that no witness, expert or otherwise, may testify to legal conclusions which involve the capacity to make a will or to do the very thing that the decedent did do; that such testimony invades the province of the jury and authorizes the witness to decide the question for the court.

A similar question was before the Supreme Court of Iowa in the case of Ipsen v. Ruess, 241 Iowa 730, 41 N.W.2d 658, 661, wherein the court said:

"Testamentary capacity is a mixed question of law and fact. Grismore v. Consolidated Products Co., 232 Iowa 328, at page 361, 5 N.W.2d 646. That means that the law sets up the standard and the litigants introduce evidence of facts designed to prove whether or not the deceased measured up to that standard. Because mental capacity is a subject that is unfamiliar to the ordinary juror the courts permit opinion testimony by experts who are familiar with the general subject of mental capacity—the opinion to be based upon the evidence of facts. But the experts' opinion evidence must be confined to the field in which he is an expert. As

stated in Adamson v. Burgle, Tex.Civ. App., 186 S.W.2d 388, 397: '* * * the expert in stating his opinions must be restricted to his particular field, which is limited by the superior knowledge, experience or education possessed by him as compared with that of the jury.'

"In other words, the expert's opinion is a fact inference—a medical diagnosis that the consequences of the facts amount to a certain mental status. Whether that status would measure up to legal capacity or incapacity is for the jury to decide. But it is perfectly proper for the doctor to give his 'opinion respecting the testator's ability to comprehend those concrete facts, the understanding of which is a legal requisite to the execution of a will.' 32 C. J.S., Evidence, § 535."

The questions asked the doctors in this case were paraphrased from the questions propounded the medical witness in the case of Adamson v. Burgle, Tex.Civ.App., 186 S.W.2d 388, writ ref.w.m. In discussing whether the answers to these questions were admissible, the San Antonio Court of Civil Appeals determined that the admission of such testimony did not constitute error. It said that expert testimony should be excluded when the expert states a conclusion necessarily based upon an inference which he is not authorized to make, or when the expert drew an inference which the jury is as well qualified to draw as he is, or when it is apparent that the witness is not an expert in the field of knowledge concerning which he testified.

■ In this case there is no question that Dr. Whiting and Dr. Kiel are experts in the study and practice of medicine. Obviously they are better qualified than the members of the jury to diagnose the testatrix' physical condition and to determine the effect this condition would have on Mrs. King's mental condition. It is not contended that they base their opinion as to the testatrix' mental condition on an inference they were not authorized to make. In our opinion their testimony was properly admitted by the trial court.

■. The appellant complains of those portions of the testimony of Drs. Whiting

and Kiel which are based in part on hospital records. More particularly, he objects to that part of their testimony in which they detail the incident surrounding a stroke suffered by the testatrix at her home in Vernon some time prior to March, 1944. Neither of these physicians treated the testatrix on this occasion and their information concerning it came largely from the hospital records which neither of them made. Presumably, the information concerning the stroke was given to some one at the hospital by the testatrix herself. These records, however, were made under Dr. Kiel's supervision. Although there is testimony tending to contradict some of the symptoms set forth in the hospital records— and even the date of the stroke is questioned— it is not denied that Mrs. King did suffer a stroke. Both physicians stated that they testified as to Mrs. King's mental condition from their personal knowledge and observation of the patient over a period of time —they used the hospital records merely to refresh their memory. In any event the error complained of, in the light of the other evidence offered, did not amount to such a denial of the appellant's rights as to cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure.

The appellant contends that the court erred in admitting the opinion evidence of Drs. Whiting and Kiel because the witnesses failed to testify to any facts or circumstances which could be considered as unusual or out of the ordinary or indicate that the testatrix was of unsound mind. The same objection was made to the testimony of Mrs. Ralph King, the testatrix' daughter-in-law. We have set forth above the particular portion of the doctors' testimony to which the appellant objects. Mrs. Ralph King testified she had known the testatrix for many years, that the testatrix had suffered a stroke in 1944, and that her health had been in a general decline for several years. After the stroke Mrs. Jessie King was nervous, forgetful and it was hard for her to carry on a connected conversation. Shortly before her death the testatrix stated that she had not made a will. Although she was a person of means, she often said,

"I can't even afford to get myself any clothes; I have to save enough to be buried in." The evidence shows that the testatrix was well-dressed. Her clothes were selected by her daughters. Mrs. Ralph King further testified that in her opinion Mrs. Jessie King was of unsound mind on May 16. 1946. She based this opinion on her long acquaintance and intimate association with the testatrix.

Even a non-expert witness, such as Mrs. Ralph King, may testify to the mental capacity of a testatrix when it is shown that the witness had sufficient opportunity to observe her demeanor, conduct and mental condition and that her testimony is based upon her own observations. Whether the witness has proved satisfactorily that she had sufficient opportunity to observe such conditions is left largely to the discretion of the trial court. The record reveals that Mrs. Ralph King had known the testatrix intimately for nearly thirty years. In our opinion the trial court did not abuse its discretion under the circumstances: Mrs. Ralph King was qualified to testify as to the testatrix' mental competency on the day the will was executed. Applegate v. McFadin, Tex.Civ.App., 20 S. W.2d 396, 398. The record abundantly reveals that the physicians were likewise qualified to testify. Mills v. Kellahin, Tex. Civ.App., 91 S.W.2d 1097, dism.

The appellant insists the court erred in refusing his requested instructions 3, 4 and 6. Omitting the formal parts these read: "A testator has the right and power to make a will disposing of his property as he chooses;" and "every person of sound mind has the absolute right to make a will disposing of his property as he chooses;" and "the law of the land authorizes a parent to disinherit his sons and daughters, or any one of them, for any cause and without any cause."

These instructions would have constituted a general charge, a comment upon the weight of the evidence. They are nothing more than abstract statements of law. The trial court properly defined the term "testamentary capacity" and submitted to the jury the issue of whether the testa-

trix had testamentary capacity at the time she executed the will. The instructions requested by the appellant were not explanatory of the special issue submitted to the jury nor were they necessary to enable the jury to pass upon and render a verdict on the issue. The court did not err in refusing to include these instructions in its charge. Rule 277, Texas Rules of Civil Procedure.

The appellant's next two points of error concern two pleas in abatement. In the first the appellant notes that the court should have abated the suit because the appellees did not plead and prove that the judgment of the county court admitting the will to probate was occasioned by fraud, accident or mistake. He contends that this suit is in the nature of an equitable proceeding governed by the demands of a court of equity. We do not agree with the appellant. This suit was filed under Article 5534, Vernon's Annotated Civil Statutes, which provides that any person interested in a will probated under the laws of this state may institute suit in the proper court to contest its validity within four years after the will is probated. The appellees instituted this suit in the county court of Wilbarger County within four years of the date the will was admitted to probate. White v. White, supra. This suit is not in the nature of a bill of review and therefore it was not necessary to allege that the judgment in the county court was occasioned by fraud, accident or mistake. Franks v. Chapman, 61 Tex. 576.

In his second plea in abatement the appellant contended that the appellees had waived their right to appeal and abandoned their suit by failing and refusing to offer any evidence of probative force upon the issue of testamentary capacity or undue influence in the trial in the county court. Again we do not agree with the appellant. In the county court Mrs. Ralph King testified to substantially the same facts as she did later in the district court. She said that she had known the testatrix for a number of years, that Mrs. Jessie King's health had declined gradually and that she realized that the testatrix was not normal.

Moreover, the record shows that Mrs. Ralph King was prepared to testify in the county court that in her opinion the testatrix was of unsound mind on May 16, 1946, at the time she executed the will, but she was not allowed to testify by a ruling of that court. The evidence offered on the issue of testamentary capacity in the county court is sufficient to show that the appellees had no intention of abandoning this portion of their suit.

The appellant's next five points of error are directed to various portions of appellees' argument to the jury. He contends that the court erred in permitting counsel to argue to the jury that it should do justice and right between the parties; that the attorney who drew the will and who was one of the attesting witnesses was not himself in full possession of his mental faculties; and that some one (presumably the appellant) had used undue influence in causing the attorney who drew the will to go to the testatrix' home a number of times for the purpose of discussing the contents of the proposed will. The appellant contends that the court erred in allowing counsel for the appellees to go outside the record and discuss the value of the Jessie King estate; that it erred in permitting counsel to make an inflammatory and impassioned argument to the jury in which he said that the testatrix did not know what disposition she was making of her property because she did not take into consideration in her will the keepsakes so dear to her daughters and gave to the appellant the silver star her son Ralph King had received for gallantry in action.

The appellant objected to each of these portions of the argument. In qualifying the appellant's bill of exception, however, the trial court ordered counsel's entire argument entered in the record. The court qualified the various bills of exception by saying that the argument complained of by the appellant was a legitimate argument in view of the testimony and that generally the statements made by counsel concerning the value of Jessie King's estate was a proper deduction from the facts proved. The appellant did not except to the trial court's qualifications.

In discussing the scope of the argument of counsel to a jury, the Supreme Court said in Ex parte Fisher, 146 Tex. 328, 206 S.W.2d 1000, 1005: "Great latitude is allowed counsel in discussing the facts and issues. Counsel are permitted to show the environments of the case; they may comment upon the bias or interests of the parties and witnesses, and may discuss the reasonableness or unreasonableness of the evidence and its probative effect or lack of probative effect; * * *."

The portions of counsel's remarks objected to by the appellant come within this rule. It is true that the record contains no evidence of any one exerting undue influence over the testatrix and the subject of undue influence is not an issue in the case. However, when counsel hinted that some one may have encouraged the attorney who wrote the will to visit the testatrix' home, he was doing nothing more than drawing a deduction and inference from the testimony. Rule 269, Texas Rules of Civil Procedure. The record does reveal that the attorney who drew the will was over eighty years old; as a matter of fact, he didn't know within six years how old he was; his health was poor and his memory of recent events was imperfect; but he did say he had several conferences with the testatrix concerning the will. We do not believe that the appellant was injured as a result of these portions of the appellees' argument especially when they are read and considered with counsel's entire argument. They introduced nothing new in the case. Counsel told the jury nothing it did not already know from the pleadings, the witnesses and the general conduct of the case, viz., that the appellees were contending that the testatrix did not have testamentary capacity at the time she executed the will. Counsel is not required to confine his argument to such mild and vague statements about the testimony that a jury may not know what counsel believes the testimony warrants the jury in finding.

Later in his argument counsel for the appellees said: "Now remember that we don't say that she was crazy; we don't say that she was insane. We say and plead that she was old and infirm and could not understand the nature of her act." And, later, in speaking of the medical testimony, counsel said: "How much stronger did they have to go? They did not say she did not have testamentary capacity, but they did say that she couldn't understand it and the definition of testamentary capacity includes that. It incorporates that, if she didn't know the extent of her property, if she didn't know those things, that she was bound and obligated to give her children, then of course she did not have testamentary capacity."

Neither of the foregoing portions of the argument was objected to by appellant's counsel. But it is contended by the appellant that the argument was so prejudicial and inflammatory that no objection was necessary. What constitutes inflammatory argument is dependent entirely upon the facts of the case. Benson v. Missouri, K. & T. R. Co., Tex.Civ.App., 200 S.W.2d 238, 237, writ ref.n.r.e. Undoubtedly, under the holdings of our courts, no error would have existed if the trial court had instructed the jury not to consider counsel's remarks; however, the appellant did not object to the remarks made by appellee's counsel, and the court did not instruct the jury not to consider them. The appellant suffered no injury by reason of the remarks made by appellees' counsel taken as a whole. The statements are not of such a character as would warrant a reversal of the case, especially since the appellant failed to object to the argument at the time it was made. Humphreys v. Roberson, 125 Tex. 558, 83 S.W.2d 311; Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054; Meaders v. Moore, Tex.Civ.App., 113 S.W. 2d 689, affirmed 134 Tex. 127, 132 S.W.2d 256, 125 A.L.R. 817; Pacific Employers Ins. Co. v. Gage, Tex.Civ.App., 199 S.W.2d 537, writ ref. n. r. e.

The appellant next contends that the court erred in excusing seven persons who had been summoned for jury duty. They were excused the day before they were required to be in attendance upon the court. Five of these were excused for business reasons, one was excused for illness and one because of his mother's illness. None of them filed with the clerk of the court

an affidavit in writing claiming a statutory exemption. The appellant objected to the action of the court in excusing the prospective jurors and asked that the entire panel be discharged and the case postponed until another panel was summoned. The court overruled the appellant's objection, gave the sheriff the required oath and ordered him to pick up twelve jurors. As a result of this procedure the appellant was forced to accept as a juror one of those who had been summoned by the sheriff.

The court qualified the bill of exception by saying that the men excused were known by the court and that the court knew that each had a valid reason for not serving as a juror. There is nothing in the record to show that the talesmen were improperly summoned, Article 2131, Vernon's Annotated Civil Statutes, or that the appellant was forced to take a particular talesman because he had exhausted his peremptory challenges, Article 2147, Article 2148. The action complained of did not amount to such a denial of the rights of the appellant as to cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure.

In addition to setting aside the will, the court's judgment decreed that the Jessie King estate vest in her heirs in accordance with the law of descent and distribution; it vested the title to the estate in the testatrix' children, share and share alike; it decided heirship; it directed that the appellant deliver forthwith to each of the appellees one-fifth of the estate; and it instructed him to account to each appellee for his portion of the estate.

The appellant contends that the trial court was without authority to make such a disposition of the estate. We agree with his contention. This action was not in the nature of a partition suit. It was brought for the purpose of testing the validity of the will of Jessie King, deceased. In probate cases appealed from the county court, the district court has only such jurisdiction as the county court might have exercised in the probate proceeding. The function of a probate court is limited to determining whether the will was executed by the decedent in the manner prescribed by the statute and at a time when he was legally competent to execute it free from duress, fraud and undue influence. The probate court being without jurisdiction to pass on any other questions than those we have mentioned, "the district court had none on appeal, its jurisdiction being limited to such as the probate court could properly have exercised." Huston v. Cole, 139 Tex. 150, 162 S.W.2d 404, 406; Pullen v. Russ, Tex.Civ.App., 209 S.W.2d 630, writ ref. n. r. e.

In a cross assignment of error the appellees declare that the court erred in allowing the appellant, as executor, attorney's fees in the amount of $5,000, together with the sum of $777.05 as expenses for defending the suit. The appellant was the only person interested in upholding the will. He was the sole beneficiary and the record fails to disclose that there were any debts owed by the estate. Although the appellant had been appointed executor in the original proceeding in the probate court, nothing remained for him to do in this connection and his office had become functus officio.

In 14 Texas Jurisprudence, 487, it is said: "It is error for the court, in rendering a judgment for plaintiffs suing to set aside the probate of a will to order that all costs accruing in the action, including an attorney's fee of the defendants, be paid out of the estate. The reason for this is that the estate itself is in no way interested in the outcome of the suit, the action of the defendants in the matter being purely in their own individual interests."

Renn v. Samos, 37 Tex. 240. In our opinion the trial court erred in overruling the appellees' motion to disallow the appellant's claim for attorney's fees and expenses.

We have carefully reviewed the voluminous record in this case. None of the appellant's points of error reveals reversible error. The judgment of the trial court setting aside the will of Jessie King, deceased, is affirmed; but those portions of the judgment which seek to partition the Jessie King estate and to grant to the appellant attorney's fees and expenses are reversed and judgment is here rendered.